# IN THE MATTER OF THE APPEAL OF FRANK A. SANDERS ALIAS BEN STRAUS FROM THE DISMISSAL OF A WRIT OF HABEAS CORPUS.

December 15, 1922.

No. 23,351.

**Extradition—fugitive from justice—how disproved.**

1. The Governor's warrant of rendition issued in response to a demand of the executive of a sister state charging that the accused is a fugitive from the justice of such state is presumptive evidence of the fact; and to establish that he was not such fugitive it must clearly and satisfactorily appear that he was not such fugitive, that is, that he was not in the demanding state.

**Relator a fugitive.**

2. Guided by these rules it is *held* that the relator is a fugitive from the justice of North Dakota.

[1]Reported in 191 N. W. 391.

Upon the relation of Frank A. Sanders the district court for Otter Tail county issued its writ of habeas corpus. John Wagener, sheriff of Ramsey county, made return that the petitioner was placed in his custody by virtue of a warrant issued by the Governor of Minnesota upon the requisition of the Governor of North Dakota for the delivery of petitioner as a fugitive from justice. By consent of the parties the application was heard by Haupt, J., who quashed the writ and remanded relator. From that order, relator appealed. Affirmed.

*Thomas V. Sullivan*, for petitioner.

*Clifford L. Hilton*, Attorney General, *James E. Markham*, Assistant Attorney General, *Harold B. Nelson* and *W. F. Donohue*, for respondent.

DIBELL, J.

Upon the demand of the Governor of North Dakota the Governor of Minnesota issued his warrant for the rendition of Frank A. Sanders as a fugitive from justice. A writ of habeas corpus, issued on the relation of Sanders, was quashed upon a hearing in the district court for Ramsey county and he appeals.

The substantial question is whether Sanders is a fugitive from the justice of North Dakota. Other questions are raised. They are decided adversely to him without discussion. They are unimportant. His counsel frankly and properly concede the question whether he is a fugitive from justice to be the important one, and direct their argument to it.

1. Presumptively the Governor's warrant proves that the one accused is a fugitive from the justice of the demanding state. State v. Curtis, 111 Minn. 240, 126 N. W. 719; State v. Langum, 126 Minn. 38, 147 N. W. 708; State v. Langum, 135 Minn. 320, 160 N. W. 858; State v. Boekenoogen, 140 Minn. 120, 167 N. W. 301; Hogan v. O'Neill, 255 U. S. 52, 41 Sup. Ct. 222, 65 L. ed. 497.

Speaking with facts like those before us in view, the one accused must have been in the demanding state when the crime was committed, or when some act either overt, looking to its accomplishment, or by way of plan or conspiracy with like purpose, was done,

for otherwise he is not a fugitive from the justice of such state. In State v. Langum, 135 Minn. 320, 160 N. W. 858, we quoted the language of Munsey v. Clough, 196 U. S. 364, 25 Sup. Ct. 282, 49 L. ed. 515, to the effect that "when it is so conclusively proved, that no question can be made that the person was not within the demanding state when the crime is said to have been committed, and his arrest is sought on the ground only of a constructive presence at the time, in the demanding state, then the court will discharge the defendant;" and the language of People of State of Ill. v. Pease, 207 U. S. 100, 28 Sup. Ct. 58, 52 L. ed. 121, that the accused "should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice." Though there has been an expression of doubt as to the jurisdiction of courts to review the executive conclusion (Biddinger v. Commissioner, 245 U. S. 128, 38 Sup. Ct. 41, 62 L. ed. 193), the cases bearing upon the necessary degree of proof run along the lines indicated by the quotations given. Hogan v. O'Neill, 255 U. S. 52, 41 Sup. Ct. 222, 65 L. ed. 497, Appleyard v. Massachusetts, 203 U. S. 222, 27 Sup. Ct. 122, 51 L. ed. 161, 7 Ann. Cas. 1073; State v. Boekenoogen, 140 Minn. 120, 167 N. W. 301; State v. Langum, 126 Minn. 38, 147 N. W. 708; 25 C. J. 269; 11 R. C. L. 732-734.

2. With these rules for our guidance we inquire whether Sanders was in North Dakota at the time of the commission of the crime for which his rendition was ordered by the Governor.

On the early morning of November 2, 1922, the State Bank of Wolford in Pierce county, North Dakota, was robbed, and travelers' checks and money in considerable amounts were taken. Wolfred is 22 miles from Rugby, the county seat, and about 500 miles from St. Paul, some 16 or 17 hours' ride by railway. One witness, with some degree of positiveness, says that about 10:30 or 10:45 p. m. of November 1, 1922, Sanders came into the lobby of a hotel at Rugby, with a companion, went into the basement, and after a stay of a few minutes left the hotel. Shortly before November 16, 1922, Sanders, passing under the name of Strauss, either Ben Strauss or Been Strauss, was arrested at Pittsburg, Kansas. Travelers' checks taken from the Wolfred bank were upon him. He talked with a

representative of the American Bankers Association; said that Strauss was not his true name; declined to give it; said he bought the checks of the "mob" in Fargo, North Dakota, about a week before; bought $505 worth and paid for them 25 per cent of their face; used them at various places in Missouri and Kansas; denied that he had anything to do with "the bank part of it;" suggested that he might give information leading to the identification of those from whom he purchased; but always stoutly maintained that he had nothing to do with the robbery. It may be gathered from the testimony that he used the checks in Iowa as early as November 6 or 8.

After his arrest in Kansas he started for North Dakota in charge of the sheriff of Pierce county without a rendition warrant. When passing through Fergus Falls, Minnesota, writ of habeas corpus was served upon the sheriff and his further homeward progress with Sanders as his prisoner was interrupted. After this a demand was made by the Governor of North Dakota and the rendition warrant upon which Sanders is now held was issued by the Governor of Minnesota, the validity of which was sustained in the habeas corpus proceeding under review.

The claim of Sanders is that he was not in North Dakota when the crime was committed or at a date materially connected with it. There is substantial evidence that he was in St. Paul. Some 9 or 10 witnesses testify in his behalf. There is evidence that he and his wife registered at a St. Paul hotel on October 29, 1922. This is the testimony of his wife supported by that of the hotel clerk. She thinks he stayed there until about the seventh. There is evidence that he was negotiating the purchase of an auto on the first and second of November, and a day or two before; and that one was bought on the second, and was delivered perhaps on the third. Most of the identifying evidence is disinterested and credible. Some of it is of indefinite value as proof. On the whole a strong alibi is made. Sanders does not testify. His omission to do so may be taken against him, though it is well enough explained if his statement is true that he bought the stolen checks from Fargo parties. This might naturally enough keep him from testifying though his story that he was not concerned in the robbery were true.

Mindful of the rule by which we are guided in weighing evidence presented on an issue such as is before us, we are unable to say that the evidence of identification of the North Dakota witness is so overborne by the testimony of the St. Paul witnesses that Sanders should be held not to be a fugitive from justice. He should be put to his defense in North Dakota. This is not his time or place of trial.

The order quashing the writ is affirmed and the relator is remanded to custody under the rendition warrant of the Governor of Minnesota.